**So Ordered.**

**Dated: April 10th, 2023**



*FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 22-00623-WLH7 |
| CHRISTOPHER BLANCO, | **MEMORANDUM OPINION** |
| Debtor. | |

    The discharge is a cornerstone of the consumer bankruptcy system. Robust enforcement of the discharge is necessary to preserve and operationalize its effect and, when the facts and law are sufficiently clear, contempt sanctions can be part of the judicial enforcement program.

    Here, the parties disagree about whether particular debts are subject to the discharge. Because binding Ninth Circuit precedent leaves no fair ground of doubt that the prepetition claims were discharged, the court grants the debtor's motion to sanction a collection agency for violation of the discharge injunction.

### BACKGROUND & PROCEDURAL POSTURE

    At some point in mid-2021, the debtor became employed as a counselor for Apple Valley Counseling Services, LLC. In October 2021, the debtor entered into at least two contracts with his employer. The first contract recites that Apple Valley Counseling had paid for certain training expenses and provides that if the debtor "quits or is terminated from employment . . . prior to October 7 2023 [sic]," then the debtor would reimburse Apple Valley Counseling $627.50.[1] The second contract provides, among other things, that the debtor will "take proper care of all

---

[1] *See* ECF No. 24-2 at p. 3 of 5; ECF No. 24-6 at p. 14 of 15; ECF No. 26 at p. 5 of 28.

company equipment" belonging to Apple Valley Counseling and used during his employment and that the debtor "may be held financially responsible for lost or damaged property."[2]

On June 28, 2022, the debtor filed a chapter 7 bankruptcy petition and included Apple Valley Counseling in the creditor matrix.[3]  As a result, Apple Valley Counseling received actual notice of the bankruptcy via first class mail.[4]

In August 2022, the debtor's employment with Apple Valley Counseling ended.[5]  Apple Valley Counseling sent the debtor a letter and invoice requesting that the debtor pay $746.63—$627.50 on account of the training expense reimbursement and $119.13 to repair alleged damage to a monitor.[6]  When the debtor did not pay the requested amount, Apple Valley Counseling assigned the debt to Action Collectors, Inc., which sent the debtor a debt-collection notice dated October 6, 2022, for the original debt balance plus some accrued interest.[7]

On October 13, 2022, this court entered an Order of Discharge, granting the debtor a discharge under Bankruptcy Code section 727.[8]  Notice of this order was sent by first class mail to both Apple Valley Counseling and Action Collectors.[9]  Action Collectors then sued the debtor in Yakima County District Court, which lawsuit remains pending.[10]

After some letters between counsel failed to resolve matters, the debtor moved to reopen his bankruptcy case and then moved to sanction both Apple Valley Counseling and Action Collectors for violation of the discharge injunction and automatic stay.[11]  Action Collectors opposed the debtor's motion, arguing that

---

[2]  *See* ECF No. 24-6 at p. 15 of 15; ECF No. 26 at p. 7 of 28.

[3]  *See* ECF No. 1 at p. 9 of 10.

[4]  *See* ECF No. 7.

[5]  There apparently is a dispute, which is not now before the court or relevant to the issues addressed in this opinion, about whether the debtor quit or was fired.

[6]  *See* ECF No. 24-2 at pp. 2–5 of 5.

[7]  *See id.* at p. 1 of 5.

[8]  ECF No. 17.

[9]  *See* ECF No. 19.  Action Collectors was listed on the debtor's creditor matrix, apparently because it was pursuing collection of a separate, unrelated debt against the debtor before the petition date.

[10]  *See* ECF No. 24-3.

[11]  ECF No. 24.

**MEMORANDUM OPINION**  Page 2

the debts it seeks to collect arose postpetition and are not discharged.[12] The court held an initial hearing regarding the motion and heard oral argument regarding the debtor's request to sanction Action Collectors for violation of the discharge injunction. That aspect of the debtor's motion is now ready for decision.[13]

# DISCUSSION

## *Jurisdiction, Power, and Procedure*

The court has subject matter jurisdiction regarding this bankruptcy case pursuant to 28 U.S.C. §§ 157(a) & 1334(b) and LCivR 83.5(a) (E.D. Wash.). The parties' dispute regarding an alleged violation of the Bankruptcy Code's discharge injunction is statutorily "core" and "the action at issue stems from the bankruptcy itself."[14] The discharge also is manifested in a prior order of this court, which order carries with it retained bankruptcy jurisdiction for purposes of interpretation and enforcement.[15] Accordingly, the court may properly exercise the judicial power necessary to finally decide this dispute.

A proceeding to hold a creditor in contempt for violating the discharge injunction may be brought by motion in the main bankruptcy case.[16] No party has suggested an adversary complaint is needed in this context or raised any other procedural issues regarding the debtor's motion.[17]

---

[12] ECF No. 26.

[13] Apple Valley Counseling did not appear at the initial hearing and debtor's counsel raised various issues regarding this component of the debtor's motion, including the possible need for discovery and an evidentiary hearing. Because there is no factual dispute relating to the debtor's interactions with Action Collectors, the court bifurcated the motion and thus does not address the additional issues regarding the debtor's requested relief against Apple Valley Counseling.

[14] *See* 28 U.S.C. § 157(b)(2)(I); *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

[15] *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (reciting the "easy" conclusion that a "Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); *Pepper v. Litton*, 308 U.S. 295, 304 n.11 (1939) (Douglas, J.) (observing how "the bankruptcy court has been held to have jurisdiction over a supplemental and ancillary bill to enjoin a creditor, after adjudication and discharge of the bankrupt, from prosecuting his claim in a state court"). Although the bankruptcy court retains jurisdiction regarding the discharge, this retained jurisdiction is not exclusive and discharge issues could be raised and resolved elsewhere. *See, e.g.*, *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019) (noting that state courts "have concurrent jurisdiction over such questions" and quoting rules advisory committee commentary about how discharge disputes are often not determined in bankruptcy court).

[16] *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011).

[17] *Cf. Precision Bus. Consulting, LLC v. Medley (In re Medley)*, 2023 Bankr. LEXIS 374, at *16–17 (B.A.P. 9th Cir. Feb. 13, 2023) (finding it unnecessary to determine whether an adversary proceeding was required to resolve a dispute about sanctions under Bankruptcy Code section 362(k) when the sanctioned party "never requested an adversary proceeding" and thus "waived this point of error").

*The Bankruptcy Discharge*

The Supreme Court long ago described "the two great objects" of federal bankruptcy law as its operation "to grant a discharge to honest debtors who should conform to its provisions, and to distribute their property ratably among all their creditors."[18] The Court later amplified the philosophical underpinnings of the discharge:

> The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor. . . . The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage-earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.[19]

Society's need for a pressure release valve that can advance personal liberty and human dignity by truncating excessive debts is at least as pressing nearly 90 years after the *Local Loan* decision. It is thus no surprise that the discharge remains a centerpiece of the modern Bankruptcy Code.[20] In the context of a chapter 7 case, the discharge frees the debtor from "all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt

---

[18] *Buckingham v. McLean*, 54 U.S. (13 How.) 151, 166 (1852). Although the discharge may have been a great object of the Bankruptcy Act of 1841, earlier bankruptcy law (both in the United States and elsewhere) was less debtor-friendly and postured more as a creditor's remedy than as a system of relief for overburdened debtors. *See generally, e.g.*, *In re Zamora*, 2020 Bankr. LEXIS 1963, at *9–12 (Bankr. E.D. Wash. July 27, 2020) (discussing history and evolution of bankruptcy law in the United States).

[19] *Local Loan Co. v. Hunt*, 292 U.S. 234, 245 (1934).

[20] The discharge is not—and never has been—absolute. Congress has balanced "multiple, often competing interests" by codifying a series of exceptions to discharge that reflect other policies, such as not rewarding dishonest debtors or protecting certain stakeholders, and hence the statute does not "focus[] on the unadulterated pursuit of the debtor's interest." *See Bartenwerfer v. Buckley*, 143 S. Ct. 665, 669 (2023). No one argues that any statutory exceptions to discharge are applicable in this case.

or liability is filed."[21] A discharge under any chapter of the Bankruptcy Code is effectuated through Bankruptcy Code section 524(a), which automatically voids certain judgments and deploys two injunctions, including "an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under the applicable chapter-specific section] as a personal liability of the debtor."[22]

Because the discharge operates on "claims" and their statutory companion "debts," it is necessary to explore the meaning of those terms before one fully appreciates the scope and extent of the discharge and the related injunctions.[23]

*Bankruptcy Claims*

The Bankruptcy Code broadly defines the term "claim" to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, ***contingent***, matured, ***unmatured***, disputed, undisputed, legal, equitable, secured, or unsecured."[24] The definition is sweeping because "Congress intended by this language to adopt the broadest available definition of 'claim.'"[25]

The broad statutory definition and express inclusion of "contingent" and "unmatured" rights to payment fits with how a bankruptcy filing automatically accelerates a debtor's future obligations on and as of the petition date.[26] By collapsing all of a debtor's future payment obligations to the present, the Bankruptcy Code ensures that all such obligations will be addressed and channeled through the bankruptcy claims process. The act of accelerating and fixing all past, present, and future rights to payment using the petition date as "the moment when

---

[21] 11 U.S.C. § 727(b).

[22] *Id.* § 524(a). The modern, self-executing discharge mechanics break with earlier bankruptcy law whereby discharge in bankruptcy was an affirmative defense and waived if not raised by the debtor. *See, e.g.*, *Dimock v. Revere Copper Co.*, 117 U.S. 559, 565–66 (1886); *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 165–70 (B.A.P. 9th Cir. 2005) (detailing rejection of *Dimock* approach in 1970 legislation and through the subsequent enactment of section 524(a)); *Meadows v. Hagler (In re Meadows)*, 428 B.R. 894, 904–07 (Bankr. N.D. Ga. 2010) (similarly rejecting *Dimock* rule in modern bankruptcy context).

[23] Because a "debt" simply is "liability on a claim," 11 U.S.C. § 101(12), the inquiry quickly reduces to the meaning of "claim." *See, e.g.*, *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557–58 (1990).

[24] 11 U.S.C. § 101(5)(A) (emphasis added).

[25] *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

[26] *See, e.g.*, *In re Oakwood Homes Corp.*, 449 F.3d 588, 602 (3d Cir. 2006); *In re Ridgewood Apartments*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994); *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297–98 (Bankr. S.D.N.Y. 1984), *aff'd in part, rev'd in part*, 60 B.R. 403 (S.D.N.Y. 1986).

the affairs of the bankrupt are supposed to be wound up" flows from a fiction that "the whole matter could be settled in a day by a pie-powder court."[27]

One implication of the broad definition of "claim" is that rights to payment potentially arising in the future may nevertheless be prepetition general unsecured claims (i.e., debts subject to discharge or treatment in a bankruptcy plan) if the genesis of those rights is a prepetition contract or occurrence. The "dependency on a postpetition event does not prevent a debt from arising prepetition" because "[a] debt can be absolutely owing prepetition even though that debt would never have come into existence except for postpetition events."[28] Three decisions by the Ninth Circuit Court of Appeals illustrate how this principle works.

First, in *Christian Life Center Litigation Defense Committee v. Silva (In re Christian Life Center)*,[29] the appellate court considered whether an indemnification claim asserted by an officer of the debtor named Argue was entitled to administrative expense priority status. Although the allegedly indemnifiable expenses arose from postpetition litigation against Argue, "[a]ny duty of the [debtor] to reimburse or indemnify Argue for his legal expenses arises from these pre-petition services," which meant the "claim is at most a general unsecured claim not entitled to administrative priority."[30] As the court explained, "[i]t makes no difference that the duty to indemnify Argue for litigation expenses, if such duty exists, did not accrue until after the petition was filed when Argue incurred those expenses; the critical fact is that the claim for indemnity arose from pre-petition services Argue provided the corporation."[31]

Second, in *SNTL Corp. v. Centre Insurance Co. (In re SNTL Corp.)*,[32] the appellate court addressed the status of an unsecured creditor's claim for attorneys' fees based on legal work performed postpetition. The court disagreed with the proposition that such a claim arose or accrued after the petition date; because the

---

[27] *See Sexton v. Dreyfus*, 219 U.S. 339, 344–45 (1911); *Addison v. Langston (In re Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1342 (5th Cir. 1984).

[28] *United States v. Gerth*, 991 F.2d 1428, 1433–34 (8th Cir. 1993) (ultimately concluding that a claim "came into existence at the time the contract was signed" and thus was a prepetition claim even though it was subject to future contingencies since "a contingency does not change when a claim arises"). *See also, e.g., United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 595–97 (B.A.P. 9th Cir. 2007) (extensively citing *Gerth* and following its framework for analyzing whether a debt arose prepetition).

[29] 821 F.2d 1370 (9th Cir. 1987).

[30] *See id.* at 1374.

[31] *Id.*

[32] 571 F.3d 826 (9th Cir. 2009).

right to payment derived from a prepetition agreement, any resulting claims "are contingent claims as of the petition date" that are allowable as part of the prepetition general unsecured claim.[33]

Third, in *Goudelock v. Sixty-01 Ass'n of Apartment Owners*,[34] the appellate court resolved whether a chapter 13 debtor can discharge personal liability for condominium association assessments that become due postpetition. The court concluded that the assessment obligation is a "debt" that arose when the debtor purchased a condo before the petition date.[35] The future assessments "are part of the pre-petition debt" with a legal status as "unmatured" and "contingent" obligations, and therefore are subject to the bankruptcy discharge.[36] In the process of reaching this conclusion, the court cited and relied on *In re Rosteck*, in which the Seventh Circuit Court of Appeals determined that the chapter 7 discharge applied to similar postpetition assessments because a prepetition contract was the source of the debtors' obligations, even though "whether and how much they actually had to pay depended on future uncertain events."[37]

The take-home lesson of *Christian Life Center*, *SNTL*, and *Goudelock* is that "Ninth Circuit case law clearly demonstrates that a creditor may have a prepetition general unsecured 'claim' under a prebankruptcy contract even if the circumstances necessary to trigger that claim do not occur until after the bankruptcy filing."[38]

---

[33] *See id.* at 843–44.

[34] 895 F.3d 633 (9th Cir. 2018).

[35] *See id.* at 637–38.

[36] *See id.* at 638.

[37] *See* 899 F.2d 694, 697 (7th Cir. 1990). Congress legislatively overruled *Rosteck* in part by adding a specific exception to discharge regarding these assessments. *See* 11 U.S.C. § 523(a)(16). The need for such an exception supports the broader point that, absent such an exception, the postpetition assessments would be discharged. *See, e.g.*, *In re Coonfield*, 517 B.R. 239, 243–44 (Bankr. E.D. Wash. 2014) (Corbit, J.).

[38] *Siegel v. FDIC (In re IndyMac Bancorp, Inc.)*, 2012 Bankr. LEXIS 1462, at *77 (Bankr. C.D. Cal. Mar. 29, 2012) (ultimately concluding that a claim based on a prepetition contract was a general unsecured claim despite many postpetition events that had to happen before the claim became a liquidated, fixed, and matured obligation), *report and recommendation approved and adopted by* 2012 U.S. Dist. LEXIS 88666 (C.D. Cal. May 30, 2012), *aff'd*, 554 F. App'x 668 (9th Cir. 2014). *See also, e.g.*, *Bruce v. Fazilat (In re Bruce)*, 2018 Bankr. LEXIS 2082, at *10 (Bankr. C.D. Cal. July 12, 2018) (explaining that "Defendant's claim for holdover damages and attorney's fees would be a prepetition claim because the lease was rooted in Plaintiff's prepetition past and was an unmatured contingent debt as of the petition date and merely became mature when Plaintiff held over postpetition in his occupancy of the Property"); *In re Hipwell*, 1997 Bankr. LEXIS 2430, at *11–12 (Bankr. D. Idaho Mar. 18, 1997) ("When parties enter into a contract prior to bankruptcy, any future right to payment accrues at the time of contracting, even though the establishment or determination of the amount owed under the contract occurs postpetition. In other words, a claim is not transformed from a prepetition claim to a post-petition claim simply because it cannot be computed until after the petition is filed." (citations omitted)).

*Civil Contempt Sanctions*

In *Taggart v. Lorenzen*,[39] the Supreme Court addressed when a bankruptcy court may hold a creditor in contempt for violating the discharge injunctions. The Court explained how Bankruptcy Code section 105(a) allows bankruptcy courts to issue such orders as are necessary to effectuate the discharge injunctions in Bankruptcy Code section 524(a), including civil contempt orders.[40] Through the combination of sections 105(a) and 524(a), "the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction," which invokes an objective standard focused on if there is "a fair ground of doubt" regarding "whether the creditor's conduct might be lawful under the discharge order."[41] When applying this standard, "civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."[42]

## ANALYSIS OF THE MOTION

*There Is No Fair Ground of Doubt that These Debts Were Discharged*

The claims Action Collectors is pursuing against the debtor were plainly subject to the debtor's discharge. The genesis of each of these obligations is prepetition contracts in which the debtor promised to pay his employer if certain future events occurred. Those payment obligations may have been contingent and unmatured when the debtor filed his chapter 7 petition, but the obligations were fully rooted in, and directly contemplated by, events from the prebankruptcy past. The decisions in *Christian Life Center*, *SNTL*, and *Goudelock*, as well as the various other decisions cited and discussed above, make clear that any obligations owed under the debtor's prepetition contracts are prepetition claims, even if the specific liability under those contracts was triggered and crystalized postpetition.

There is no fair ground of doubt about this conclusion. Action Collectors cites no contrary case law and provides no cognizable basis on which to distinguish published and binding Ninth Circuit precedents. Instead, Action Collectors simply

---

[39] 139 S. Ct. 1795 (2019).

[40] *See id.* at 1801.

[41] *See id.* at 1801–02, 1804.

[42] *Id.* at 1802.

asserts that the debtor's obligations are postpetition debts because the payment obligations did not "accrue" until the events necessary to trigger those obligations happened after the petition date. This "accrual" theory of when a bankruptcy claim arises was once the law in the Third Circuit,[43] but that precedent "was widely criticized by courts and commentators alike," "has been repeatedly rejected by the Ninth Circuit Court of Appeals," and was overruled by an *en banc* panel of the Third Circuit Court of Appeals in 2010.[44] Action Collectors offers no support for its "accrual" theory and that theory simply cannot be squared with Ninth Circuit case law.

Because the *Taggart* standard is objective, it does not matter whether Action Collectors was aware of or understood the determinative Ninth Circuit authorities.[45] And, even if it mattered, Action Collectors, like everyone, is presumed to know the law.[46] The fact that the debtor and Action Collectors disagree about whether the discharge applies similarly does not provide sufficient doubt; it would circumvent *Taggart*'s objective standard if litigants' disagreement alone provided a fair ground of doubt.[47]

In sum, the debts Action Collectors sought to collect from the debtor are prepetition claims that were discharged, which means Action Collectors violated the discharge injunction when it commenced the state-court collection action. Because there is no fair ground of doubt that the discharge encompasses these debts, the court holds Action Collectors in civil contempt and determines that it is appropriate to impose sanctions.

---

[43] *See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 336–38 (3d Cir. 1984).

[44] *See, e.g.*, *In re IndyMac Bancorp*, 2012 Bankr. LEXIS 1462, at *79 (citing various authorities).

[45] *See, e.g.*, *In re Craytor*, 2023 Bankr. LEXIS 479, at *25–27 (Bankr. D.N.J. Feb. 22, 2023) (discussing how ignorance or misunderstanding of the law is not relevant under *Taggart* when "there was no objectively reasonable basis for concluding that the creditor's conduct might be lawful"); *In re Sivas*, 2022 Bankr. LEXIS 3143, at *8–9 (Bankr. D. Nev. Oct. 28, 2022) (finding that sanctions were appropriate under *Taggart* when binding Ninth Circuit precedent established that the applicable debts were discharged; the fact that the creditor's counsel may have been unaware of the Ninth Circuit opinions and "[did] not specialize in bankruptcy matters nor regularly practice in bankruptcy court" was irrelevant).

[46] *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 199 (1991); *Maynard Inv. Co. v. McCann*, 465 P.2d 657, 662 (Wash. 1970).

[47] *Cf. Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 461 (1999) (Thomas, J., concurring) ("A mere disagreement among litigants over the meaning of a statute does not prove ambiguity; it usually means that one of the litigants is simply wrong.").

### *Calculation of the Specific Sanctions Components*

The compensatory civil contempt framework empowers the court to award an aggrieved debtor "compensatory damages, attorneys['] fees, and the offending creditor's compliance with the discharge injunction."[48]

Based on the record now before the court, the court will impose the following specific sanctions against Action Collectors.

<u>Dismissal of the State-Court Litigation</u>. Action Collectors is directed to dismiss its pending state-court action against the debtor within 14 days and to refrain from pursuing any other collection action against the debtor based on the debts Apple Valley Counseling assigned to Action Collectors.

<u>Attorneys' Fees</u>. But for Action Collectors' mischaracterization of the discharged obligations as postpetition debts, the debtor would not have had to retain counsel to rectify the discharge violation. It is appropriate then to require Action Collectors to compensate the debtor for his reasonable attorneys' fees and costs.[49]

Debtor's counsel has segregated and itemized the fees incurred on the debtor's behalf and specifically related to Action Collectors.[50] The court has reviewed debtor's counsel's fees for reasonableness and considered the expenses incurred of record and concludes that an aggregate award in the amount of $2,790.00 is appropriate.[51]

---

[48] *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (citing 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][c] (15th ed. 1999)).

[49] *See, e.g.*, *In re Larsen*, 580 B.R. 901, 915 (Bankr. D. Idaho 2017) (awarding attorneys' fees and costs incurred as compensation for discharge violation); *In re Flint*, 557 B.R. 461, 468–69 (Bankr. N.D. W. Va. 2016) (noting the court's "broad discretion" to fashion orders requiring contemnor to pay costs associated with vindicating discharge order, including attorneys' fees); *In re Moreno*, 479 B.R. 553, 570 (Bankr. E.D. Cal. 2012) (explaining court's inclination to award entirety of attorneys' fees incurred in seeking compliance with discharge injunction and litigating sanctions motion where debtor's counsel's "repeated attempts" to inform opposing counsel that their client might be in violation of discharge injunction were met only with counsel's continued insistence that their client's actions conformed with the law); *In re Feagins*, 439 B.R. 165, 178–79 (Bankr. D. Haw. 2010) ("An award of reasonable attorneys' fees and costs incurred as a result of [the] violation of the discharge injunction, including the fees incurred in [the related] adversary proceeding, is an appropriate remedy.").

[50] *See* ECF No. 32. Though the debtor did not submit documentation supporting any costs' award, the debtor did incur a $260.00 filing fee for his motion to reopen the case to pursue the sanctions motion. *See* ECF No. 21.

[51] The court awards the debtor $2,660.00 in attorneys' fees and $130.00 in costs. The costs' award represents one-half of the filing fee to reopen the case given the court's decision to bifurcate the issues regarding Action

Damages for Stress. The debtor generally alleges that he suffered stress as a result of the debt collection and other activities by Apple Valley Counseling and Action Collectors. The record contains no evidence supporting or quantifying these asserted damages and the debtor did not request the opportunity to present further evidence as it relates to Action Collectors.[52] As such, the court awards $0.[53]

Noncompensatory Fine. The court may impose a "relatively mild," noncompensatory fine designed to coerce Action Collectors into compliance with the discharge injunction.[54]

Action Collectors' continued reliance on an erroneous legal position is unjustified. The debtor sought Action Collectors' compliance with the discharge injunction before bringing his sanctions motion when he demanded that Action

---

Collectors' discharge violation from the debtor's requested relief against Apple Valley Counseling. The attorneys' fees award includes a total downward adjustment of $525.00 for time spent conducting "research concerning automatic stay" (ECF No. 32 at March 28 entry) and for hearing attendance by counsel who did not present argument (ECF No. 32 at March 29 entry). *See Wesley v. Oh (In re Oh)*, 2008 Bankr. LEXIS 4722, at *31 (B.A.P. 9th Cir. Apr. 16, 2008) (affirming bankruptcy court's deduction of fees unrelated to debtor's "efforts to set aside offending conduct" from attorneys' fees award (citation omitted)); *Eskanos & Adler, P.C., v. Roman (In re Roman)*, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002) ("[I]n determining the appropriate amount of attorneys' fees to award as a sanction, the court looks to two factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." (citations omitted)).

[52] The debtor did request the opportunity to offer further evidence as it relates to Apple Valley Counseling and the court has scheduled an evidentiary hearing regarding this and other issues.

[53] *See, e.g.*, *Bates v. CitiMortgage, Inc. (In re Bates)*, 2015 Bankr. LEXIS 1312, at *9–14 (Bankr. D.N.H. Apr. 16, 2015) (declining to award any emotional distress damages for a discharge violation when the debtor simply offered general accounts of being stressed and left the court unable to find specific injuries "in any direct or quantifiable way"); *see also Snowden v. Check Into Cash of Wash. Inc. (In re Snowden)*, 769 F.3d 651, 656–57 (9th Cir. 2014) (limiting emotional distress awards under Bankruptcy Code section 362(k) to cases where a petitioner suffers, and clearly establishes, "significant harm" and demonstrates a causal connection between that significant harm and the violation as "distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process"); *Ocwen Loan Servg., LLC v. Marino (In re Marino)*, 577 B.R. 772, 787 (B.A.P. 9th Cir. 2017) (same rule should apply to discharge violations), *aff'd in part, appeal dismissed in part*, 949 F.3d 483 (9th Cir. 2020).

[54] *E.g.*, *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192–93 (9th Cir. 2003) (prohibiting assessment of "serious" punitive sanctions but "leav[ing] for another day the development of a precise definition of the term 'serious'"); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137–38 (9th Cir. 2001) ("A fine is civil and remedial if it either coerces the defendant into compliance with a court's order or compensates the complainant for losses sustained." (cleaned up)); *In re Marino*, 577 B.R. at 788–89 (comparing the Ninth Circuit's simultaneous prohibition against "serious punitive damages" with the grant of authority to impose "relatively mild noncompensatory fines"; panel noting that it "did not see any meaningful difference between 'punitive damages' and 'noncompensatory fines'" and thus holding that the bankruptcy court erred by concluding it lacked authority to award punitive damages (citations omitted)).

Collectors dismiss its state-court action.[55] Action Collectors did not dismiss the lawsuit, opting instead to pursue its unsupported and widely rejected "accrual" theory. Despite being warned that its actions might run afoul of the discharge injunction, Action Collectors pressed on, forsaking the opportunity to investigate and remedy its violation. A fine would thus have the coercive effect of encouraging Action Collectors' future respect for and compliance with the discharge injunction.[56] As such, the court imposes a $100.00 fine to be paid to the debtor.

## SUMMATION

For the reasons detailed above, the court finds and concludes that Action Collectors violated the debtor's bankruptcy discharge and that there is no fair ground of doubt that the discharge applies to Action Collectors' violative acts. The court will therefore grant the debtor's motion as to Action Collectors, hold Action Collectors in civil contempt, and issue a separate order imposing the sanctions described in this opinion.

---

[55] *See* ECF No. 24-4.

[56] *See, e.g.*, *In re Lewis*, 2017 Bankr. LEXIS 928, at *8–9 (Bankr. D. Mont. Apr. 3, 2017) (imposing a $500 fine for each violative incident to "compensate Debtor and insure [sic] future compliance"); *In re Martinez*, 561 B.R. 132, 176 (Bankr. D. Nev. 2016) (fine appropriate where creditor did not explain reasoning for violative conduct under an apparent "shoot first and ask questions later" policy). *Cf. In re Pohlman*, 2018 Bankr. LEXIS 2389, at *22 (Bankr. D. Idaho Aug. 10, 2018) (noncompensatory fine not awarded where sanctionable conduct "began and ended" when improper debt collection letter sent to debtor).